# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES SMITH JR., | ) |
| Claimant, | ) No. 15 CV 3704 |
| v. | ) Jeffrey T. Gilbert<br>) Magistrate Judge |
| CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant James Smith, Jr. ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.]

Pursuant to Federal Rule of Civil Procedure 56, Claimant has moved for summary judgment. [ECF No. 14.] For the reasons stated below, Claimant's motion for summary judgment is granted and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

In July 2011 Claimant applied for supplemental security income and disability insurance benefits, initially claiming a disability onset date of June 15, 2006, which was later amended to July 14, 2011. (R. 30, 153–165, 247.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 75, 77, 104–105.) Claimant,

represented by counsel, appeared and testified before an Administrative Law Judge (the "ALJ") on August 15, 2013. (R. 24, 33–63.) A medical expert and a vocational expert also testified. (R. 24, 63–73.)

On December 23, 2013, the ALJ issued a written decision denying Claimant's application for benefits based on a finding that he was not disabled under the Social Security Act. (R. 11–23.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. As an initial matter, the ALJ noted that Claimant met the insured status requirements of the Social Security Act through September 30, 2011. (R. 13.) At step one, the ALJ concluded that Claimant had not engaged in substantial gainful activity since his amended alleged onset date of July 14, 2011. (*Id.*) At step two, the ALJ found that Claimant had the severe impairments of arthritis of the lumbar spine and bilateral knees, status post lumbar strain, and refractive error. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. §404.1520.) (R. 14.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform work at the medium exertional level and to frequently but not continuously kneel, crouch, crawl, or climb ramps or stairs; however, he could never climb ladders, ropes, or scaffolds, nor could he work in an environment with concentrated exposure to hazards such as moving machinery or unprotected heights; and he could never climb ladders, ropes, or scaffolds. (R. 14.) Based on this RFC, the ALJ determined at step four that Claimant could perform his past relevant work as a janitor or cleaner. (R. 17.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 18.) The Social Security

2

Appeals Council subsequently denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1–3.) *See Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106–107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue,* 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may

not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms v. Astrue,* 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. DISCUSSION

Claimant argues that this matter should be remanded because: (1) the ALJ erred in weighing medical opinion evidence; and (2) the ALJ failed to adequately develop the record and improperly relied on a lack of evidence as a basis to discredit Claimant's reported symptoms. After reviewing the parties' briefs and the administrative record, the Court agrees that the ALJ did not provide a sound explanation for his weighting of the available medical opinion evidence. Remand is therefore appropriate.

1. **The ALJ did not provide a sound explanation for his weighting of conflicting medical opinions from reviewing and testifying experts**

Claimant, who has worked as a janitor and housekeeper, alleges that he can no longer work due to illiteracy and due to severe pain in his legs, back, and knees. (R. 38, 48, 184, 190, 195.) The medical evidence of record includes two opinions from Claimant's treating physician in addition to opinions from several reviewing physicians and one testifying medical consultant. Because the ALJ erred primarily in his evaluation of the testifying and reviewing physicians' opinions, the Court begins its analysis there.

Social Security regulations direct an ALJ to evaluate each medical opinion in the record to determine what weight to give to it in accordance with a number of factors. 20 C.F.R. § 404.1527(c). These factors include the length, nature, and extent of any treatment relationship;

4

the frequency of examination; the physician's specialty; the physician's familiarity with Social Security regulations; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin,* 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). *See* 20 C.F.R. § 404.1527(c), 416.927(c). In general, a physician who personally has examined the claimant is given more credence than one who has only reviewed his medical file. 20 C.F.R. § 404.1627(c)(1). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013.)

The first reviewing physician, Dr. James Hinchen, M.D., completed a Residual Functional Capacity assessment on September 20, 2011. Dr. Hinchen based his opinions on Claimant's self-reports and the report of a medical consultant who had examined Claimant in August 2011. Based on this review, Dr. Hinchen indicated that Claimant had no established functional limitations in lifting, sitting, standing, using his hands, hearing, pushing, pulling, or speaking. (R. 260–263.) He based these conclusions on several normal findings from the recent consultative exam and on a lack of objective medical evidence supporting Claimant's allegations of pain. (R. 260, 254.) Dr. Hinchen also specified that, due to limited visual acuity, Claimant should avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights. (R. 262–263.)

Over the course of two emergency hospital visits in January 2012, Claimant received treatment for gallstones. (R. 267–403.) A Computerized Tomography (CT) scan taken of Claimant's abdomen on January 12, 2012 incidentally revealed endplate degenerative changes of Claimant's thoracic and lumbar spine. (R. 359–360.) A follow-up CT scan of January 18, 2012, which also was focused on Claimant's abdomen, incidentally revealed mild to moderate lumbar

5

spinal spondylosis, evident in marginal osteophyte formation (bony outgrowths) at multiple levels of the lumbar spine. (R. 299–300.)

In November 2011, when Claimant appealed the initial denial of his claim, he reported that the pain in his back and feet had worsened, and that he could only walk for ten to fifteen minutes at a time. (R. 207.) On February 29, 2012, state reviewer Richard Bilinsky, M.D., reviewed Claimant's file, including the newly-submitted records of Claimant's recent hospitalizations, and found that his condition did not show any worsening. (R. 406.) Therefore, he re-affirmed Dr. Hinchen's earlier RFC, which found that Claimant had no exertional limitations. Dr. Bilinsky noted that a physical exam taken during Claimant's hospital visit had demonstrated "normal [ranges of motion,] normal motor strength, and normal gait." (*Id.*) Dr. Bilinsky, who specializes in the treatment kidney disorders,[1] did not reference the CT scan findings relating to Claimant's spine. (R. 404–406.) On March 17, 2012, reviewing physician Thomas S. Rowe, M.D., indicated that he agreed with the prior assessments of Claimant's visual and environmental limitations. (R. 424–425.)

However, on March 15, 2012, another reviewing doctor objected to the earlier reviewers' findings. Louis Chelton, M.D., an orthopedist,[2] reviewed Claimant's file and concluded that the new CT scans provided sufficient evidence to establish a medically-determinable impairment of degenerative joint disease of the lumbar spine. (R. 422–423.) Dr. Chelton also objected to the earlier assumption that Claimant's pain was "non-severe." He wrote, "In the absence of imaging of the lumbar spine this assumption is unjustified because there are painful conditions of the back which may produce few or no objective exam findings." (R. 422.) Dr. Chelton went on to

---

[1] The form completed by Dr. Bilinsky indicates that his specialty code is 24, which, per the Administration's own internal operations manual, denotes nephrology. Social Security Administration, Program Operations Manual System, § DI 24501.004 Medical Specialty Codes, available at https://secure.ssa.gov/poms.nsf/lnx/0424501004 (last visited November 17, 2016.)
[2] Dr. Chelton's specialty code, 29, denotes orthopedics. *Id.*

criticize the prior reviewers because they had not requested "imaging evidence of a painful back condition" and had overlooked "incidental findings of lumbar spine degenerative joint disease on new CT imaging." (R. 422.) Dr. Chelton reiterated that the new evidence "confirm[ed] the presence of degenerative disease" consistent with Claimant's history of back complaints. (R. 422).He also noted that Claimant's reported worsening of his condition, an increase of back pain while walking, was "consistent with… lumbar spinal stenosis." (R. 423.) Because Claimant's abdominal CT scans lacked the necessary specificity "to allow detailed determination of the degree of [lumbar spine] deterioration or the presence of spinal stenosis," Dr. Chelton wrote that it was "not possible to accurately assess" Claimant's degree impairment from his medically-determinable impairment based on the existing record. Dr. Chelton concluded that "more definitive imaging" of the lumbar spine, in the form of plain x-rays, was necessary. (R. 422–423.)

X-ray scans performed on Claimant's lumbar spine in May and June 2013 revealed mild spurring, multilevel disc disease, moderate narrowing of the L4-L5 disc space, and facet joint arthritic changes. (R. 460.) X-rays taken of Claimant's knees in June 2013 showed bilateral distal quadriceps enthesopathy (an abnormality at the site where the tendon joins the bone), which was mild in the left knee and minimal in the right knee. (R. 461.)

At Claimant's hearing on August 15, 2013, medical expert John Franklin Condon, M.D., testified telephonically after reviewing Claimant's file and hearing his testimony. (R. 24, 63–68, 114.) Dr. Condon confirmed that the record showed that Claimant has had a persistent problem with back pain. (R. 63.) He observed that, though although the file did not have "any good imaging" of Claimant's back and the diagnosis was "really not worked out in this record," Claimant's history as reported was "pretty typical for someone with severe spinal stenosis." (R.

7

64.) Though he described the objective evidence as "very, very minimal," Dr. Condon noted that it is not unusual for a diagnosis in a case like Claimant's to require "a lot of MRI's." (R. 65–66.) He explained that "sometimes the people with spinal stenosis do not have a lot of really big x-ray changes," and that "there are times when it really doesn't look all that bad, but the effects are severe." (R. 65–66.) Dr. Condon then repeated his opinion that Claimant's description of his symptoms was "very classic for severe spinal stenosis." Based on changes in Claimant's straight-leg tests and his recent history of his knees giving way, Dr. Condon testified that between January 2012 and the date of the hearing "I would suspect some really radical changes, as far as neurological findings and range of motion and that, which is not in the record." (R. 66–67.)

When asked if he was able to formulate an RFC, Dr. Condon opined that a person with spinal stenosis could usually sit for one hour at a time without shifting positions and sit for six of eight hours total in a work day, but could not climb stairs or ladders even occasionally. Likewise, the person could only occasionally squat, stoop, or perform other postural movements. (R. 67.) He would be limited to ten pounds of lifting or carrying. Dr. Condon noted that, while Claimant's record did not specifically indicate that he was limited in the use of his hands or upper extremities, persons with back pain generally "have trouble reaching overhead repeatedly." (R. 68.) Dr. Condon stressed that he based his opinions on what is usual for spinal stenosis, adding that Claimant's "description of what he does is very classical for that." (R. 68.)

In formulating his RFC assessment, the ALJ performed only a perfunctory weighing of the opinions of the reviewing and testifying experts. First, he gave "significant weight" to the opinions of the first three reviewing physicians, who assessed only minor environmental limitations with no exertional or postural limitations. (R. 15.) The ALJ found their reports

8

consistent with "the overall record" and found that later-submitted evidence did not support any greater functional limitation. (R. 15.) As examples of later-submitted evidence, the ALJ cited findings from two physical examinations and a 2011 X-ray of another patient's cervical spine.[3] (R. 15.) He did not mention Claimant's 2012 abdominal CT scans. He then referenced the contradictory opinion of Dr. Chelton, correctly noting that "this consultant concluded that more definitive imaging of Claimant's lumbar spine was needed," but did not assign any weight to that opinion or address its explicit criticism of Dr. Bilinksy's findings, which the ALJ accepted. He also made no mention of Dr. Chelton's specialization as an orthopedist, despite the field's clear relevance to Claimant's complaints. Finally, the ALJ described Claimant's 2013 x-rays as showing "minimal bilateral arthritis" in Claimant's knees and "arthritis at the L4-L5 level of Claimant's spine," but he did not reconcile those reports with his heavy weighting of the opinions of doctors who had not viewed that evidence.

Next, the ALJ summarized portions of the expert opinion testimony of Dr. Condon. He gave "significant weight" to Dr. Condon's acknowledgement that the record lacked clear documentation but afforded only "some weight" to his other conclusions. (R. 16–17.) The ALJ explicitly rejected Dr. Condon's conclusion that Claimant would be limited to sedentary work, explaining that "this opinion seems to be based solely on the claimant's subjective allegations, given the lack of supporting objective evidence." (R. 17.)

An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000); *Rohan v. Chater* 98 F.3d 966, 968 (7th Cir. 1996.) Yet that is exactly what the ALJ has done here. When asked whether he was "able to formulate any opinion regarding an RFC,"

---

[3] This X-ray result appears to have been included in Claimant's file inadvertently, as Claimant has never claimed any cervical problem and another patient's name appears at the top of the report. (R. 511.)

9

Dr. Condon, a trained medical doctor with over four decades' experience, replied with specific RFC findings that amounted to a restricted range of sedentary work. (R. 67–68.) If he were unable to formulate an RFC assessment based on the available information, he was free to say so. Contrary to the ALJ's assertion, he did not base his RFC assessment "solely" on Claimant's subjective statements. Rather, using his own professional judgment, he also considered the other evidence before him, which included treatment notes, CT scans reports, and x-ray reports that earlier reviewers had not seen. The ALJ, who is not a doctor, rejected Dr. Condon's interpretation of that evidence and instead concluded that none of that evidence supported any functional restrictions greater than those assessed by Dr. Hinchen and Dr. Bilinsky. (R. 15.) He did not supply the requisite "sound explanation" for his weighting of the various consultant' opinions. Instead, he attempted to displace Dr. Condon's medical judgment with his own, contravening applicable law.

2. **The ALJ did not properly evaluate the treating physician's opinion**

Claimant also argues that the ALJ erred in his evaluation of the opinions of Tony Hampton, M.D., Claimant's treating physician. Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin,* 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel,* 227 F.3d at 870. An ALJ must provide "good reasons" for the weight he gives to a treating source's medical opinion. *See Collins v. Astrue,* 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our ... decisions for the weight we give your treating source's opinion."). When an ALJ decides for good reasons not to give controlling

10

weight to a treating physician's opinion, he must still determine what weight to give to it in accordance with the same series of factors that apply to all medical opinions. *Yurt v. Colvin,* 758 F.3d 850, 860 (7th Cir. 2014); *see* 20 C.F.R. § 404.1527(c), 416.927(c).

Dr. Hampton treated Claimant for back and knee pain approximately six times between January 2012 and June 2013. (R. 447, 466–476.) In written opinions dated in June and July 2013, Dr. Hampton identified Claimant's primary symptoms as back stiffness, which was worse with walking or prolonged sitting, and knee swelling and pain. (R. 447.) He indicated that Claimant could sit for less than two hours total and stand for less than two hours total in a work day. (R. 449.) Claimant could occasionally lift less than ten pounds but never more, and could never stoop, bend, crouch, squat, or climb ladders or stairs. (R. 450.) Dr. Hampton estimated that, in a competitive work environment, Claimant could sit for twenty minutes, standing for ten minutes, and walk for a distance of half a block at a time, with the aid of a cane. (R. 448–449, 453.) The doctor also opined that Claimant would need to take breaks every thirty minutes, shift positions at will, and walk around every fifteen minutes throughout the workday. (R. 449.) If he had a sedentary job, he would need to elevate his leg for half of the day and lie down hourly. (R. 449–453.) He could use his hands and fingers for twenty percent of the day and reach overhead or in front of his body for just five percent of the day. (R. 450.) He would likely be off task for 25% of the day or more, and was incapable of even low-stress work due to the severity of his pain. (*Id.*) He was likely to experience symptoms every day. (R. 451.) Dr. Hampton reported that Claimant's condition was evidenced by objective signs including reduced ranges of motion, positive straight leg tests, knee swelling, muscle spasms, muscle weakness, tenderness, and crepitus. (R. 448.)

11

The ALJ gave "very little weight" to Dr. Hampton's assessment because its "rather extreme findings are not supported by the claimant's objective treatment records, but instead appears (sic) to be heavily based on the claimant's subjective complaints." (R. 16.) The ALJ elaborated that the findings "echo the claimant's subjective allegations at the hearing, but are not documented in the medical evidence." (*Id.*) He ultimately crafted an RFC somewhere between the two extremes presented by the initial reviewing doctors and Dr. Hampton, finding Claimant capable of a limited range of medium work. (R. 14.)

The Commissioner argues that, by evaluating the supportability of Dr. Hampton's statements, the ALJ followed the regulatory requirements regarding treating physician evidence. It is true that a treating physician's opinion that is unsupported by or is contradicted by other evidence in the record need not be given controlling weight. *Loveless v. Colvin,* 810 F.3d at 507. However, even if the ALJ was correct in determining that some of Dr. Hampton's "extreme findings" were unsupported by the treatment record, he erred in ending his inquiry there. An ALJ must determine what weight to give each non-controlling medical opinion in accordance with a set of factors, of which supportability is only one. *Moss v. Astrue,* 555 F.3d at 561. The ALJ did not explain how the length, nature, and extent of the treatment relationship between Dr. Hampton and Claimant and the frequency of examination affected his opinion. He did not acknowledge consistencies between Dr. Hampton's opinion and that of Dr. Condon, who testified at the hearing. He also overtly discounted Dr. Hampton's opinion because it mirrored Claimant's hearing testimony, even though the regulations specify that consistency between an opinion and "the record as a whole" should generally result in that opinion's receiving more weight, not less. 20 C.F.R. § 404.1527(c). In sum, the ALJ failed to follow the applicable

12

regulations for weighting all of the available medical opinion evidence, and therefore did not support his findings with substantial evidence.

   3.   **Remaining arguments**

Because remand is required to complete a proper evaluation of the medical opinion evidence, the Court draws no conclusion about the merits of Claimant's remaining arguments. One of those arguments is that the ALJ did not consider how Claimant's lack of medical insurance affected his ability to obtain necessary treatment and testing that would have contributed to a more developed record. On remand, the ALJ is reminded that he may not draw negative inference about Claimant's symptoms from any gaps in treatment unless he first explores the possible reasons for those gaps, including an inability to afford treatment. SSR 16-3p, 2016 WL 1119029, at *8–9.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:  December 29, 2016